IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Medford Division

| | | |
|---|---|---|
| REBECCA LYNN JONES, | ) | |
| Plaintiff, | ) ) | |
| | ) | 1:12-CV-01605-JO |
| v. | ) ) | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) ) | OPINION AND ORDER |
| Defendant. | ) ) | |

JONES, J.,

Plaintiff Rebecca Jones appeals the Commissioner's decision denying her application for disability insurance benefits under Title II of the Social Security Act. The court has jurisdiction under 42 U.S.C. § 405(g). I REVERSE the Commissioner's decision and REMAND for calculation and award of benefits.

**PRIOR PROCEEDINGS**

Jones alleged disability beginning August 22, 2008, due to bipolar disorder, schizoaffective disorder, anxiety, paranoia, and auditory hallucinations. Admin. R. 59, 146, 164. The alleged onset date coincides with the date she was separated from her employment with Jackson County Health Department based on a medical discharge. Admin. R. 595-96.

-1-    OPINION AND ORDER

The ALJ applied the sequential disability determination process described in 20 C.F.R. § 404.1520. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). The ALJ found that Jones's ability to perform basic work activities was significantly limited by schizoaffective disorder. Admin. R. 20. The ALJ found that, despite her impairments, Jones retained the residual functional capacity ("RFC") to perform work involving simple, routine, repetitive tasks with a reasoning level of no greater than 1, no more than occasional contact with coworkers, and no contact with the general public. The ALJ found that Jones had no physical impairments limiting her ability to perform work at all levels of exertion. Admin. R. 22.

The ALJ found that Jones's past relevant work required activities that were precluded by her RFC. The vocational expert ("VE") testified that a person with Jones's age, education, work experience, and RFC could perform light, unskilled occupations such as table worker, hand stuffer, and basket filler, which represent hundreds of thousands of jobs in the national economy. Admin. R. 26, 101-02. Based on the VE's testimony, the ALJ concluded that Jones was not disabled within the meaning of the Social Security Act. Admin. R. 26.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings of fact are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Under this standard, the Commissioner's factual findings must be upheld if supported by inferences reasonably drawn from the record even if evidence exists to support another rational interpretation. *Batson*, 359 F.3d at 1193; *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

///

# DISCUSSION

## I. Claims of Error

Jones contends the ALJ failed to accurately assess her RFC because he improperly discredited her subjective statements about the limiting effects of her symptoms and rejected the statements of lay witnesses who observed the effects of her impairments. Jones contends the ALJ failed to recognize that in her past work, she required special accommodation that is not available in competitive employment. As a result, Jones contends, the ALJ elicited testimony from the VE with a hypothetical question that did not accurately reflect all of her functional limitations.

## II. Credibility Determination

Jones alleged disability due to bipolar disorder, schizoaffective disorder, anxiety, paranoia, and auditory hallucinations. Admin. R. 59, 146, 164. She reported a history of manic, depressive, and psychotic episodes, suicide attempts, and psychiatric hospitalizations dating back to the late 1970s. Admin. R. 514-17. She said she experiences ongoing daily auditory hallucinations. Admin. R. 61-62.

Jones alleged that her symptoms caused her to become distracted and confused and unable to maintain concentration. She was unable to multitask, work at an adequate pace, handle job stress, accept criticism from coworkers, or interact with members of the public. Admin. R. 59-60, 164. She was fearful and anxious with unfamiliar people, environments, and situations. Admin. R. 63. Jones said she could tolerate working part time at a simple job, but she needed a lot of down time and her symptoms intensified if she tried to persist longer than 10 to 15 hours a week. Admin. R. 64.

From 1991 until 2000, while receiving treatment from Jackson County Mental Health, Jones worked part time as an extra helper in their drop in center. Admin. R. 55, 174, 179, 515. During this

-3-   OPINION AND ORDER

time, she became acquainted with Jackson County Public Health Department personnel, including the Director of Human Services and the Supervisor of the Health Department. Admin. R. 55, 515. In 2000, she began working as a medical records clerk for Jackson County Public Health, which became a full time job. She had a job coach assigned by a vocational rehabilitation agency. Jones said she was able to maintain this job only because her supervisors and coworkers were aware of her mental impairments and provided a supportive work environment in which her shortcomings were overlooked and accommodated. Admin. R. 50-55, 515.

In June 2008, Jones's job as a medical records clerk was eliminated and she was placed in a clerical job in the county office for Veterans services. Her new work environment was not supportive; coworkers were distant and critical of her performance and her supervisor disciplined her for mistakes. Admin. R. 57, 60-61, 68. Jones experienced exacerbation of paranoia, extreme anxiety, and hallucinatory voices. She required periods of medical leave. Admin. R. 58-59, 515-16. On August 22, 2008, she was granted a medical discharge and separated from her employment. Admin. R. 57-58.

Jones tried to find another job as a medical records clerk and received unemployment benefits until March 2009, when she began working part time in a small candy store. She said she works 10 to 15 hours a week, and if she increases her work hours, her symptoms intensify and her performance deteriorates. Admin. R. 76.

The ALJ found that the medical evidence supported mental impairments that could reasonably be expected to cause the symptoms Jones alleged. Admin. R. 23. He did not identify affirmative evidence showing that Jones was malingering. Under such circumstances, an ALJ must assess the credibility of the claimant's statements regarding the severity of symptoms. *Smolen v.*

-4- OPINION AND ORDER

*Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996). An adverse credibility determination must include specific findings supported by substantial evidence, and the ALJ's reasons must be clear and convincing. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Smolen v. Chater*, 80 F.3d at 1281-82. The findings must be sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Tomasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

The ALJ found that Jones's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible to the extent they asserted limitations exceeding those in her RFC assessment. Admin. R. 23. Essentially, the ALJ discredited Jones's claim that she could not work full time, without special attention in a supportive work environment, even if the job involved only simple, routine, repetitive tasks involving very little reasoning, only occasional contact with coworkers and no contact with the general public.

In assessing credibility, an ALJ must consider all the evidence in the case record, including the objective medical evidence, the claimant's treatment history, medical opinions, daily activities, work history, the observations of third parties with knowledge of the claimant's functional limitations, and any other evidence that bears on the consistency and veracity of the claimant's statements. *Tommasetti*, 533 F3d at 1039; *Smolen*, 80 F3d at 1284; SSR 96-7p, 1996 WL 374186, at *5.

The ALJ considered the medical evidence from Jones's treating physicians. Treatment records from her psychiatrist, Michael Sasser, M.D., reflect that Jones was generally stable on her medications in the years leading up to the alleged onset of her disability in 2008. Her stability was adversely affected by events at her work, however. For example, in the summer of 2007, Dr. Sasser

-5-   OPINION AND ORDER

observed that Jones was apprehensive, worried, self conscious, and required frequent reassurance after a change in protocols disturbed her work routine. Admin. R. 285-86. In June 2008, when Jones began working in the office for veterans services, Dr. Sasser noted that she seemed to be overwhelmed because the job involved multiple duties that she could not juggle adequately. Her supervisor wrote a letter of concern regarding her numerous mistakes on the job, suggested that she was "over her head," and told her to go on leave. Her coworkers were distant and did not provide the support she had enjoyed in her previous job in the public health office. Jones reported an increase in auditory hallucinations, anxiety, and worry. Admin. R. 283.

In July 2008, Jones went to her primary care provider with extreme anxiety. Patricia Hoyecki, F.N.P., observed that she was sobbing and crying and seemed terrified that she would lose her job and not be able to get another one. Jones said she was making mistakes at work so frequently that her supervisor complained that she needed to be retrained every morning. Hoyecki noted that Jones was able to calm down with verbal reassurance. Admin. R. 350.

In August 2008, Jones returned to Dr. Sasser because her anxiety, stress, and auditory hallucinations continued despite elevated medication levels. Dr. Sasser indicated Jones would not be able to continue her job due to stress and deterioration. He recommended that she transfer to a less stressful job within her capabilities. Admin. R. 288. Dr. Sasser noted that Jones would probably be able to do most parts of her job individually if she were not required to do multiple tasks concurrently. The anxiety compromised her job performance and worsened her underlying schizoaffective disorder, further exacerbating her anxiety, and so forth. Dr. Sasser also noted that while Jones was off work on leave, her overall mental status examination was appropriate. Admin. R. 289.

On August 11, 2008, Dr. Sasser prepared a questionnaire requested by the human resources department of Jones's employer. He indicated that Jones had life long depression and anxiety resulting in decreased attention, concentration, ability to focus, and ability to multitask, increased anxiety and frustration, and worsening of her underlying depression. Dr. Sasser said Jones's ability to perform the essential functions of her job was compromised by decreased ability to focus on tasks, multitask, and tolerate multiple stimuli in the work environment. He said that the individual tasks required were not a problem, but Jones could not perform multiple tasks concurrently. He opined that Jones could not concentrate or focus and would become overwhelmed by simultaneous requirements for multiple tasks. Admin. R. 278-79.

The ALJ said that Dr. Sasser's notes and opinion supported a finding that Jones's impairments were not as severe as she claimed because he said she was probably capable of "single uninterrupted tasks." Admin. R. 23. This reasoning is not entirely convincing. Jones does not dispute that she can perform individual simple tasks. Her contention is that she cannot maintain concentration for a full time job or tolerate full time work without the frequent reassurance and support that she had in her previous job. Dr. Sasser did not address that contention one way or the other. Nor did he indicate that Jones's presentation suggested a lack of credibility.

In February 2009, Michael Villanueva, Ph.D., performed a comprehensive psychodiagnostic examination ordered by the state disability determination agency. Jones reported depression, anxiety, auditory hallucinations, and paranoia. She said she could hear people talking and thinking about her. Dr. Villanueva noted that her affect was blunted, constricted, and inconsistent with the topic of discussion. Jones was anxious and nervously repeated herself throughout the interview. His mental status examination revealed difficulties with sustained concentration. Dr. Villanueva said

-7-    OPINION AND ORDER

that Jones's symptoms were under fair control with a combination of anxiolytic and antipsychotic medications and management of stress through avoidance of certain situations and a lot of down time. Notably, Dr. Villanueava's evaluation occurred while Jones was working part time in a candy store and did not reflect her condition when she tried to work in competitive full time employment. Dr. Villanueva did not address the contention that Jones would be overwhelmed in competitive full time employment; he simply found that, while outside of competitive full time work, her symptoms appeared to be under fair control. Admin. R. 316-19.

The ALJ discredited Jones's subjective statements about the severity of her symptoms primarily because he believed her statements were contradicted by the opinions of Drs. Sasser and Villanueva. This reasoning is not entirely convincing because the ALJ's interpretation of their findings is not supported by substantial evidence. Accordingly, the ALJ's adverse credibility determination is reversed.

### III.  Lay Witness Statements

Jones contends the ALJ improperly discounted the statements of a number of lay witnesses. An ALJ must consider the testimony of a lay witness, but may discount it for reasons germane to the witness. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009). The ALJ's reasons must be supported by substantial evidence, but may appear anywhere in the decision without being tied directly to the evaluation of the lay witness statement. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).

Barbara Barnes, M.S., provided a written statement and testified at the administrative hearing in support of Jones's claim. Barnes was a case manager at Jackson County Mental Health and was involved in the treatment of Jones's mental illness for 8 to 10 years. They remained in contact after

Jones began to work next door at the Public Health Department. Barnes said that Jones continued to experience paranoia, anxiety, and other symptoms during that period of employment, but was able to cope with the job because of careful and supportive supervision that is not typical in competitive employment. When her job was eliminated and she transferred to the Office of Veterans Services without special support, Jones could not cope with her symptoms. Afterwards, while Jones was looking for other employment, Barnes observed that she had an increase in latent responses, flat affect, inability to concentrate, and impaired social skills. Admin. R. 435.

In June 2010, Barnes testified at Jones's administrative hearing. She said that Jones's supervisor and the head of Jackson County Health and Human Services were sympathetic to Jones and took an interest in helping her overcome the vocational difficulties she had due to her mental illness. She said that Jones's coworkers were skilled health care workers with experience working with people with mental impairments. Barnes said she observed Jones to be anxious and paranoid, with mildly bizarre affect, flattened affect, and disorganized thoughts since she lost her job at the Public Health agency. Even working only 15 hours a week at the candy store was difficult and resulted in paranoid behavior because Jones did not have the highly supportive environment she had in the past. Barnes said that even routine, simple tasks would make Jones symptomatic if she did not have the special support of supervisors and coworkers like she had in her previous job. Admin. R. 87-93.

The ALJ discounted Barnes's statements because he found them inconsistent with the objective findings of Drs. Sasser and Villanueva. After a careful review of the record, I conclude that the ALJ's finding is not supported by substantial evidence. Dr. Sasser found that depression and anxiety decreased Jones's capacity to maintain attention, concentration, and focus; and that

-9-    OPINION AND ORDER

multitasking increased her sense of anxiety and frustration. Admin. R. 278-79. Dr. Sasser did not make objective findings regarding Jones's ability to work full time without supportive supervision and help from coworkers adept at working with persons with mental impairments. Dr. Villanueva found that Jones's affect was blunted, constricted, and inconsistent with topic. She was anxious and repeated herself and had difficulty with concentration. Admin. R. 318-19. His findings did not address the substance of Barnes's statements. Accordingly, the objective findings of Drs. Sasser and Villanueva did not provide an adequate basis to reject Barnes's statements.

The ALJ discounted Barnes's statement because he found no evidence that Jones's past work at the Health Department was in a sheltered workshop. Admin. R. 24. After a careful review of the record, I am satisfied that Barnes did not assert that Jones worked in a sheltered workshop, as that term is normally used to describe facilities that employ people with disabilities at sub-minimum wage. Instead, Barnes said that Jones received special attention from her supervisors and coworkers that is not present in competitive jobs. This statement is supported by Jones's testimony at the hearing, her statements to her treating physicians, the statements of the lay witnesses, and Jone's work history. Accordingly, ALJ's reference to a sheltered workshop is not supported by substantial evidence and does not provide an adequate basis to discount Barnes's statement.

The ALJ found that Barnes's statements about Jones's supportive work environment lacked foundation because they were not based on direct observation of Jones at work. Barnes's statements were based on her 20 year relationship with Jones, her experience as a mental health care worker, her knowledge of the personnel and environment at the Jackson County health agency derived from years of working there, and her frequent quasi therapeutic conversations with Jones. Despite the

absence of direct observation, Barnes's statements had an adequate foundation. Accordingly, the ALJ did not articulate a sufficient basis to reject Barnes's statements.

Julia Garcia testified as a lay witness at Jones's administrative hearing. She is a job developer for the State of Oregon Office of Vocational Rehabilitation and worked with Jones to help her obtain employment at the candy store. This involved working with Jones and potential employers, providing Jones with intensive training on the specific job duties she would perform, and periodic visits to check on her status. Admin. R. 94-96. Garcia said that Jones did not have the mental capacity to maintain focus long enough for full time work. She said that vocational testing by others in the Vocational Rehabilitation agency indicated Jones was capable of part time, low stress work without multitasking and only limited public contact. Admin. R. 98-99.

The ALJ gave Garcia's statement little weight because he found it inconsistent with the assessments of Drs. Sasser and Villanueva. In particular, the ALJ found Garcia's analysis of Jones's functional capacity flawed because she relied on the number of hours worked instead of the work requirements of a particular job. Admin. R. 24. This is not entirely accurate because Garcia relied on functional limitations including the inability to multitask, limited ability to interact with the general public, and inability to maintain concentration for a full time work schedule. Admin. R. 98-99. As noted previously, Drs. Sasser and Villanueva did not address the question whether Jones could maintain concentration for a full time work schedule without special support from supervisors and coworkers.

The record includes third party statements from various lay witnesses who describe Jones as a person who participated fully in her treatment and in vocational rehabilitation programs. She made great efforts to work despite her limitations but was unable to succeed. Stephen Bason, is a program

-11-   OPINION AND ORDER

manager at an Easter Seals jobs program. After working with Jones for eight months, he said that Jones's mental health would not permit her to do a job with more hours, more stress, or a faster pace than her part time job in the candy store. Admin. R. 243. Brenda Schwegerl, worked with Jones at the Jackson County Health Department and said that the supervisors and staff there knew Jones and her mental impairments before she was hired and gave her constant reassurances to help her overcome her anxiety on the job. Admin. R. 244. Stan Way, the senior pastor at Jones's church, said that Jones appeared to suffer overwhelming depression and mental instability from what most people would consider normal work stressors. Admin. R. 245. Brad Haller worked as Jones's vocational counselor for over a year and said that Jones is mentally capable of only part time work and requires continuous counseling and guidance to achieve minimum vocational success. Hall said Jones requires support from a compassionate supervisor who is willing and able to assist her at any time. He described Jones's job at the Jackson County Health Department as a special work environment created for Jones to accommodate her mental illness. Admin. R. 247. Evelyn Fellows provided a written statement that corroborated the statements of Barbara Barnes. Admin.R. 248. Jones's brother submitted a third party statement saying that Jones cannot maintain focus or cope with stress. Admin. R. 199.

The ALJ gave these statements little weight and gave no weight to the statements that Jones cannot maintain full time employment without extraordinary support or accommodation. Admin. R. 25. The consistent corroborated statements of Jones and the various third party witnesses convince me that Jones's previous work provided extraordinary support and accommodation that is not typical in competitive employment. Furthermore, I am satisfied that the record as a whole shows that Jones is likely to decompensate and experience psychiatric symptoms if she works full time in

a competitive setting. The ALJ's conclusions to the contrary are not supported by substantial evidence. The findings and opinions of Drs. Sasser and Villanueva do not provide sufficient grounds to reject the consistent corroborated statements of Jones and the third party witnesses.

### III. Vocational Testimony

The VE testified that a hypothetical person who could not work 40 hours a week due to the likelihood that she would decompensate and have a setback in mental health would not be able to sustain competitive employment in the national economy. Admin. R. 102.

### IV. Remand

For the reasons given previously, the Commissioner's decision cannot be affirmed because the ALJ erroneously discredited Jones's subjective statements and the statements of the lay witnesses. It is within the discretion of the district court whether to remand for further proceedings or for immediate payment of benefits. *Harman v. Apfel*, 211 F.3d 172, 1178 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r*, 635 F.3d 1135, 1138-39 (9th Cir. 2011) quoting *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

Here, the erroneously rejected evidence establishes that Jones cannot work full time without extraordinary support due to the likelihood that she will decompensate and suffer setbacks in her mental health. The VE's testimony establishes that such a person cannot sustain competitive employment in the national economy. Accordingly, there are no outstanding issues to be resolved and further administrative proceedings would serve no useful purpose.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for the calculation and award of benefits.

DATED this _11_ day of December, 2013.

_____
Robert E. Jones, Senior Judge
United States District Court